

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-26-00262-CV

**IN THE INTEREST OF C.S.**, a Child

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-PA-01586
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                Velia J. Meza, Justice

Delivered and Filed: July 22, 2026

AFFIRMED

This appeal involves the termination of a father's rights at the request of the child's mother and her husband who wishes to adopt the child. Father contests the sufficiency of evidence supporting the statutory grounds for termination as well as the trial court's finding that termination is in the best interest of the child. After reviewing the appellate briefs and the record of the trial below, we affirm.

**BACKGROUND**

The child at issue, C.S.,[1] was eight years old at the time of trial. His mother and father had lived together in Georgia for the first few years of his life. However, when C.S. was three years of age, Father pleaded guilty and was convicted of statutory rape. Father served three years of a ten-year sentence before being released in the summer of 2022. Upon his release, Father worked as a contractor on remodeling contracts. Father visited the child in June of 2022 and in December of 2023 and admitted that the only support he has ever sent his son was $25 in cash for a book fair. In 2024, Father was arrested for failing to register his address as a sex offender and was reincarcerated for that offense in January 2025 to serve a one-year term.

Mother and Mother's husband filed an Original Petition for Termination and Adoption in October of 2024, seeking termination under Texas Family Code subsection 161.001(b)(1)(Q) (now subsection P).[2] They made it clear that they were seeking termination of Father's rights so that Mother's husband could adopt C.S. In June of 2025, they amended their petition to seek termination under Texas Family Code subsections 161.001(b)(1)(C), (F), and (L).[3] The case was tried to the bench on August 15, 2025 with only Mother and Father testifying. An order of termination was signed on March 11, 2026. Father timely appealed, contesting the sufficiency of

---

[1] To protect the identity of the minor child, we will refer to appellant as "Father," to appellees as "Mother" and "Mother's husband," and to the child by his initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b).

[2] Texas Family Code section 161.001(b)(1)(P) provides a ground for termination of a parent's rights if the parent "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." TEX. FAM. CODE § 161.001(b)(1)(P).

[3] These subsections of the Texas Family Code provide grounds for termination of a parent's rights if the parent "voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months;" "failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition;" or has been convicted "for being criminally responsible for the death or serious injury of a child" under various sections of the Texas Penal Code "or under a law of another jurisdiction that contains elements that are substantially similar to the elements of an offense" under same. TEX. FAM. CODE §§ 161.001(b)(1)(C), (F), and (L).

the evidence supporting termination under Texas Family Code subsections 161.001(b)(1)(C), (F), and (L) and contesting the sufficiency of the evidence supporting the trial court's determination that termination of Father's rights is in the child's best interest.[4]

## LAW AND STANDARD OF REVIEW

A suit involving the potential termination of a parent's right to a child is of constitutional import. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied). But a parent's rights "are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). Striking that balance, a trial court may terminate a parent-child relationship, pursuant to Texas Family Code section 161.001, only if it finds by clear and convincing evidence one predicate ground enumerated in subsection (b)(1) and that termination is in the child's best interest. TEX. FAM. CODE § 161.001(b)(1)–(2); *see, e.g.*, *In re C.E.*, 687 S.W.3d 304, 308 (Tex. 2024). Clear and convincing evidence requires proof that will produce in the factfinder's mind "a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. This heightened standard "guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.).

When reviewing the evidence in a parental termination case, we apply the well-established standards associated with both a legal and factual sufficiency review. *In re J.M.G.*, 608 S.W.3d 51, 53 (Tex. App.—San Antonio 2020, pet. denied). First, in a legal sufficiency review, "we 'view the facts in a light favorable to the findings of the trial judge, who heard the testimony, evaluated

---

[4] Father requested Findings of Fact and Conclusions of Law and timely filed a Notice of Past Due Findings of Fact and Conclusions of Law. The trial court entered its Findings of Fact and Conclusions of Law on May 12, 2026.

its credibility,' and dealt the closest with the evidence at hand." *In re R.R.A.*, 687 S.W.3d 269, 276 (Tex. 2024) (quoting *In re J.F.-G.*, 627 S.W.3d 304, 315 (Tex. 2021)). We will not substitute our own judgment for that of the factfinder. Instead, the factfinder is the sole judge of evidentiary weight and credibility, including witness testimony. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). We will "defer to the [factfinder's] determinations, at least so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)).

In our review, we must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). While we will disregard all evidence contrary to a factfinder's determination if a reasonable factfinder could have disbelieved it or found it to have been incredible, we will not disregard undisputed evidence even if it does not support the trial court's finding. *Id.*; *see, e.g.*, *C.E.,* 687 S.W.3d at 308.

In our factual sufficiency review, we consider the entire record and determine whether, in light of the entire record, any disputed evidence "is so significant that a factfinder could not reasonably have formed a firm belief or conviction" on the challenged finding. *J.F.C.*, 96 S.W.3d at 266.

## TERMINATION UNDER 161.001(B)(1)(L)

Texas Family Code section 161.001(b)(1)(L) allows for termination of a parent's rights to their child if they are convicted or have been placed on community supervision for an offense involving the death or serious injury of a child under certain sections of the Texas Penal Code "or under a law of another jurisdiction that contains elements that are substantially similar" to the elements of the offenses listed in that section. Father was convicted of statutory rape in Georgia.

The Georgia statute defines the offense of statutory rape as a person engaging "in sexual intercourse with any person under the age of 16 years and not his or her spouse." GA. CODE § 16-6-3. Notably, Texas does not have a statutory rape statute. The trial court, therefore, found that Father's offense was an offense that contains elements that are substantially similar to the following offenses listed in Section 161.001(b)(1)(L): Texas Penal Code section 21.11 (Indecency with a Child); Texas Penal Code section 22.021 (Aggravated Sexual Assault); and Texas Penal Code section 43.25 (Sexual Performance by a Child).

Under Texas Penal Code section 21.11, a person commits the offense of Indecency with a Child if he "engages in sexual contact with the child or causes the child to engage in sexual contact." TEX. PEN. CODE § 21.11(a)(1). "Child," for the purposes of Texas Penal Code section 21.11 is a person younger than 17 years of age "regardless of whether the person knows the age of the child at the time of the offense." TEX. PEN. CODE § 21.11(a) "Sexual contact" is defined by the statute to include the following acts "if committed with the intent to arouse or gratify the sexual desire of the person:"

(1) Any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of the child; or
(2) Any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

TEX. PEN. CODE § 21.11(c). Here, the evidence established that Father conceived a child with the victim as a result of the incident of statutory rape in Georgia, making it obvious to any factfinder that the elements of the Texas offense of Indecency with a Child were fulfilled.

Father asserts that Mother failed to provide evidence of the Georgia victim's age at the time of the offense. Hower, we need not retry the original offense but may accept the conviction as establishing the facts of same. Here, Father was convicted of engaging in sexual intercourse with someone under the age of 16. GA. CODE §16-6-3. The only question is whether that offense

involves elements that are substantially similar to, in this case, Texas Penal Code section 21.11 which requires sexual contact with a child under the age of 17 years. We hold that those offenses are substantially similar and that proof of the elements of Georgia Code section 16-6-3 satisfies the elements of Texas Penal Code section 21.11.

The only question remaining is whether the evidence is sufficient to prove that Father committed "an offense involving the death or serious injury of a child," taking into account the Georgia conviction and the testimony that a baby was born as a result of Father's offense. *See* TEX. FAM. CODE § 161.001(b)(1)(L). The Texas Supreme Court has addressed whether the commission of the offense of Indecency with a Child under Texas Penal Code section 21.11 can reasonably lead a factfinder to infer that "a serious injury to the child occurred—such that the conviction itself constitutes legally sufficient evidence under a clear-and-convincing standard to support a finding that the ground is satisfied—or whether additional evidence beyond the conviction itself is required." *Int. of Z.N.*, 602 S.W.3d 541, 546 (Tex. 2020). And, when doing so, it held that the conviction itself, without any further evidence, can imply "serious injury of a child." *Id.* Here, the record establishes that the victim of the statutory rape, who at the time was under the age of 16 years, became pregnant and gave birth to a child. While we would never say the birth of a child constitutes a serious injury, the realization by the victim that the trajectory of her life would be forever altered by that one incident can certainly be a basis for an inference of emotional or psychological trauma. And, while the Texas Supreme Court did allow for the situation in which the offending parent can refute any inference of serious injury to a child resulting from the offense, Father failed to present any such evidence. *See id.*

Because the evidence on this one point is sufficient to satisfy one of the grounds for termination as found by the trial court, and because only one predicate ground under Texas Family

Code section 161.001(b)(1) is necessary to support a termination order, we need not review Father's challenges involving the remaining grounds. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re F.B.C.L.*, No. 04-20-00477-CV, 2021 WL 1649221, at *1 (Tex. App.—San Antonio Apr. 28, 2021, no pet.) (mem. op.).

BEST INTEREST DETERMINATION

Next, Father argues the evidence was legally and factually insufficient to support the trial court's findings that termination of his parental rights is in the best interest of the child. We disagree.

## A. Applicable Law

Under Texas law, "there is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, a trial court must also presume "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE § 263.307(a). In making a best-interest determination, the factfinder looks at the entire record and considers all relevant circumstances. *In re C.H.*, 89 S.W.3d 17, 27–29 (Tex. 2002).

The Texas legislature codified certain factors to use in determining the best interest of a child, including:

(1)     the child's age and physical and mental vulnerabilities;

(2)     the frequency and nature of out-of-home placements;

(3)     the magnitude, frequency, and circumstances of the harm to the child;

(4)     whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5)     whether the child is fearful of living in or returning to the child's home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

(A) minimally adequate health and nutritional care;

(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C) guidance and supervision consistent with the child's safety;

(D) a safe physical home environment;

(E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

(F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 n.29 (Tex. 2018) (recognizing statutory factors as additional factors for consideration). Even before the legislature took action to codify section 263.307(b), the Texas Supreme Court, in *Holley v. Adams*, identified factors to determine the best interest of a child:

    (A)    the desires of the child;

    (B)    the emotional and physical needs of the child now and in the future;

    (C)    the emotional and physical danger to the child now and in the future;

    (D)    the parental abilities of the individuals seeking custody;

    (E)    the programs available to assist these individuals to promote the best interest of the child;

    (F)    the plans for the child by these individuals or by the agency seeking custody;

    (G)    the stability of the home or proposed placement;

    (H)    the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

    (I)    any excuse for the acts or omissions of the parent.

544 S.W.2d 367, 371–72 (Tex. 1976).

The petitioner need not prove every factor for a trial court to find termination is in the child's best interest. *C.H.*, 89 S.W.3d at 27. In our review of the trial court's best-interest findings, we must consider "the totality of the circumstances" in light of these factors to determine whether sufficient evidence supports the challenged finding. *In re B.F.*, No. 02-07-334-CV, 2008 WL 902790, at *11 (Tex. App.—Fort Worth Apr. 3, 2008, no pet.) (mem. op.). Additionally, "[a] trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex.

App.—San Antonio 2013, pet. denied). "The evidence supporting the statutory grounds for termination may also be used to support a finding that the best interest of the child warrants termination of the parent-child relationship." *In re S.M.G.*, No. 01-17-00056-CV, 2017 WL 2806332, at *6 (Tex. App.—Houston [1st Dist.] June 29, 2017, pet. denied) (mem. op.).

### B. Analysis

Here, the evidence demonstrated that Father has been incarcerated for almost five of the first eight years of C.S.'s life. And, when Father was not incarcerated, he chose to physically see the child only two times[5] and to offer a mere one-time contribution of $25 to his care and support.[6] Mother testified Father made no efforts to contact the child while he was incarcerated. Further, there is evidence that when the child used his phone or iPad to reach out to his father there was often no reply. Even when Father was asked what his plans were upon his release from incarceration, his testimony was about returning to work, without any mention of his child.

Mother testified that any contact with Father "causes chaos" because he makes promises and then fails to follow through. For example, Mother testified, "The few times that he did call, he makes a lot of false promises that [C.S.] would spend the whole summer with him, they would work together and all those things, and then he would go six months or a year without hearing from him. And so then C.S., you could see emotionally how it was affecting him." Mother's husband has been in the child's life since he was four years old and wants to adopt him. Mother testified that she is seeking stability for the child and to ensure that if something happens to her C.S. is not "ripped out from the life that he has been accustomed to."

---

[5] Mother testified that she and C.S. were still living in Georgia when Father was released from incarceration.

[6] Father agreed that "even though Mom didn't ask [him] for any support," he should have supported the child at least during the period that he was not incarcerated, from June of 2022 to early 2024.

The factors we are charged with considering in a review of a best-interest determination first require us to look at the desires of the child. *Holley*, 544 S.W.2d at 371–72 (Holley Factor (A)). Here, it is evident the child desires a relationship with his father but that Father has largely not reciprocated. Second, we are to look at the emotional and physical needs of the child, which the evidence shows Father did little to nothing to support. *Id.* (Holley Factor (B)). Mother's concerns about false promises and what could happen to the child if something were to happen to her are legitimate ones and fall under the factor of considering "the emotional and physical danger to the child now and in the future." *See id.* (Holley Factor (C)). Further, Father's parental choices over the last few years, including during the time he was not incarcerated, and the fact that he has not been able to establish a stable home life, lead us to review Holley Factors (D), (H) and (I) in favor of termination. *See id.* Finally, Holley Factors (F) and (G) lean towards termination since Mother and her husband have the ability to provide a stable home for the child and, when asked, Father failed to set forth any plans that would have involved a different approach to his son upon his release from incarceration.

Based on this record, we hold there is sufficient evidence to support the trial court's determination that termination of Father's parental rights is in the best interest of the child.

CONCLUSION

We affirm the trial court's order of termination.

Lori Massey Brissette, Justice